Filed 9/25/14  Modified and certified for publication 10/15/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LINDSAY T. KAN, as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> GUILD MORTGAGE COMPANY, <br><br> Defendant and Respondent; <br><br> THE BANK OF NEW YORK MELLON, as Trustee, etc., et al., <br><br> Inteveners. | B254007 <br><br> (Los Angeles County <br> Super. Ct. No. PC053905) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Mink, Judge.  Affirmed.

Paul Kujawsky for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Kerry W. Franich for Inteveners.

No appearance for Defendant and Respondent.

_____

Appellant's real property loan is in default. Appellant seeks to quiet title and avoid foreclosure by alleging that the deed of trust on the property was improperly securitized and that the beneficiary lacks authority to foreclose. Because California's nonjudicial foreclosure statutes provide no basis for appellant's claim, we find that the trial court properly sustained the demurrer to appellant's complaint without leave to amend.

## BACKGROUND

In July 2007, Lindsay Kan executed a first note for $516,000, secured by a deed of trust on real property in Stevenson Ranch (the property). The same day, he executed a second note in the amount of $64,500, also secured by a deed of trust on the property. Both trust deeds named Guild Mortgage Company as the lender, Guild Administration Corp. as the trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary acting as nominee for the lender, its successors, and assigns.

More than two years later—based on what is characterized in appellant's opening brief as "spectacularly unsound and specious advice"—Kan recorded two instruments that purported to "modify" the deeds of trust to "correctly reflect" an indebtedness of zero dollars. The instruments stated the deeds of trust were "modified to eliminate any further payments, [and] to reflect a status of 'paid as agreed.'" Shortly afterward, PCYA Trust, of which Kan is the trustee, recorded two documents labeled "full reconveyance," purporting to reconvey both trust deeds to Lindsay Kan and declare them "void at inception." Kan then deeded the property to the PCYA Trust.

In October 2010, in spite of Kan's maneuverings, MERS substituted Recontrust Company, N.A. (Recontrust) as the trustee under the first deed of trust and assigned all beneficial interest under the deed of trust to The Bank of New York Mellon (BONY), as trustee for CWALT, Inc., Alternative Loan Trust 2007-OA11 Mortgage Pass-Through Certificates, Series 2007-OA11 (CWALT).[1] Recontrust recorded a notice of default on

---

[1]    An essentially identical substitution and assignment form was filed on December 22, 2010.

December 8, 2010.  It served a notice of trustee's sale in March 2012.  The foreclosure sale, however, has not yet occurred.

The second deed of trust was assigned by MERS to Bank of America, N.A. (BofA) in July 2012.

In October 2012, Kan, as trustee of the PCYA Trust, filed a quiet title complaint against Guild Mortgage Company and "all persons or entities unknown, claiming any legal or equitable right, title, estate, lien or interest in the property."  The complaint alleged, among other things, that the loans secured by the property were securitized, resulting in defendants' interest in the property being extinguished, relinquished, or discharged.  It further claimed that all loan debt had been fully satisfied.  In addition, the complaint alleged that the securitization process was deficient because the transfer of the promissory notes to a securitized trust did not comply with the terms of the servicing and pooling agreement governing the securitized trust.

Although the complaint alleged that the first trust deed had been assigned to BONY, and an attachment to the complaint showed that the second trust deed was assigned to BofA, neither entity was listed as a defendant.  As a result, respondents BONY and BofA, along with respondent BANA LAS HFI 2ND LIEN HELOANS (BANA), moved to intervene in the action.  According to the application for leave to intervene, BONY is the current beneficiary of the first deed of trust, BANA is the current beneficiary of the second deed of trust, and BofA is the current servicer of the loans.  The trial court granted leaved to intervene.

Respondents filed a demurrer to the complaint.  Kan opposed the demurrer.  The trial court granted requests for judicial notice made in connection with the demurrer and sustained the demurrer without leave to amend.

Judgment was entered in favor of respondents.  Kan timely appealed.

## DISCUSSION

### I. Standard of Review

We review the ruling sustaining the demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law.  (*Desai*

3

*v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.)  We give the complaint a reasonable interpretation, assuming that all properly pleaded material facts are true, but not assuming the truth of contentions, deductions, or conclusions of law.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)  We may consider matters that are properly judicially noticed.  (*Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1379.)

A demurrer tests the legal sufficiency of the complaint.  (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.)  Accordingly, we are not concerned with the difficulties a plaintiff may have in proving the claims made in the complaint.  (*Desai v. Farmers Ins. Exchange*, *supra*, 47 Cal.App.4th at p. 1115.)  We are also unconcerned with the trial court's reasons for sustaining the demurrer, as it is the ruling, not the rationale, that is reviewable.  (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631; *Sackett v. Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  A plaintiff may show for the first time on appeal how amendment would cure the complaint's defects.  (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App. 4th 700, 711.)

## II.  **Proposed Amendments**

The complaint contained a number of theories by which Kan claimed he was the sole party that had valid title to the property.  On appeal, Kan abandons the majority of these theories, and argues only that he can state a valid cause of action for quiet title based on allegations that the attempt to transfer the first deed of trust to the mortgage-backed "investment" trust (CWALT) did not comply with the trust's servicing and pooling agreement and was therefore void.

Kan proposes that, upon remand, he be allowed to amend his complaint to make the following allegations:  the investment trust was created under New York law; the trust is subject to the requirements imposed by the Internal Revenue Code on real estate investment trusts; New York law requires that all trust deeds be transferred to such an investment trust before the trust closes; the transfer of the subject trust deed to the investment trust occurred after the trust closed in 2007; and the attempted transfer to the investment trust was therefore void.  Kan asserts these allegations sufficiently plead a right to quiet title in his favor, including a finding that respondents have no right, title, or interest in the property.

## III.  Analysis

Kan's argument is not a novel one.  The wave of real estate loan defaults over the past decade has given rise to a number of creative theories developed by individuals hoping to avoid foreclosure.  The argument that a defendant lacks standing to foreclose because of an improper securitization process has recently become particularly popular.

This argument was addressed in *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal App.4th 497, 511 (*Jenkins*).  The plaintiff alleged that her loan was pooled with other home loans in a securitized investment trust in a manner violating the trust's pooling and servicing agreement, thereby resulting in extinguishment of any security interest in her home.  The *Jenkins* court found that the plaintiff's allegations were insufficient to state a cause of action because "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Id.* at p. 511.)  California's nonjudicial foreclosure scheme has an """"exhaustive nature,"""" which is intended """"(1) to provide the [beneficiary-creditor] with a quick, inexpensive and efficient remedy against a defaulting [trustor-debtor]; (2) to protect the [trustor-debtor] from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser."""" (*Id.* at pp. 509-510, quoting *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).)  A

5

preemptive action "seeks to create 'the additional requirement' that the foreclosing entity must 'demonstrate *in court* that it is authorized to initiate a foreclosure' before the foreclosure can proceed," a process not contemplated by the nonjudicial foreclosure statutes. (*Jenkins*, *supra*, 216 Cal App.4th at pp. 512-513, quoting *Gomes*, *supra*,192 Cal.App.4th at p. 1154.) The *Jenkins* court distinguished a factual situation involving misconduct in a nonjudicial foreclosure sale, which can provide a basis for a valid postforeclosure cause of action, from the plaintiff's preemptive action, which improperly sought to stop or delay the nonjudicial foreclosure process. (*Jenkins*, at p. 512.)

Additionally, the *Jenkins* court found that the plaintiff lacked standing to challenge purported violations of the investment trust's pooling and servicing agreement. (*Jenkins*, *supra*, 216 Cal.App.4th 497, 514-515.) The court reasoned that the relevant parties to the pooling process were the parties that transferred the promissory notes and the third party acquirers of the notes, not the plaintiff, who was an unrelated third party to the securitization. (*Id.* at p. 515.) Even if transfers were invalid, the plaintiff would not be injured because she remained obligated under the promissory note; rather, an injured party would be one who incorrectly believed it held a beneficial interest in the promissory note. (*Ibid.*) Accordingly, the *Jenkins* court found that the demurrer to the plaintiff's complaint was properly sustained without leave to amend. (*Id.* at pp. 503, 517.)

Kan argues that *Jenkins* was decided incorrectly and that we instead should follow *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*). The plaintiff in *Glaski* alleged that his loan was transferred to a securitized trust after the trust's closing date, thus rendering the transfer ineffective. As Kan seeks to allege in an amended complaint, the *Glaski* plaintiff alleged that the late transfer violated the trust's pooling and servicing agreement and was void because, if effectuated, it would have caused the trust to lose tax advantages accruing to real estate mortgage investment conduit (REMIC) trusts; federal tax code provisions require that mortgages be transferred to such trusts within a certain time frame, usually 90 days after a trust is created. (*Id.* at pp. 1093-1095.) The court held that a plaintiff could properly allege a valid cause of action for wrongful disclosure by stating facts showing the defendant who invoked the power of sale was not the true

6

beneficiary, and that the plaintiff's allegations detailing the faulty transfer to the REMIC trust met this pleading standard.  (*Id.* at p. 1094.)

The *Glaski* court further found that a borrower has standing to contest a defective assignment to a real estate investment trust, explicitly rejecting the view that the borrower's status as a nonparty or non-third party beneficiary to an assignment agreement prevents the borrower from challenging the transfer.  (218 Cal.App.4th at pp. 1094-1095.)  Analyzing New York law, under which the investment trust was formed, the court held that a postclosing date assignment into such a trust is void.  (*Id.* at p. 1096.)  The court acknowledged that other courts, analyzing the same law, have held that postclosing transfers are merely voidable, not void.  (*Id.* at pp. 1096-1097, citing *Calderon v. Bank of America, N.A.* (W.D.Tex. 2013) 941 F.Supp.2d 753, 767; *Bank of America National Association v. Bassman FBT, L.L.C.* (2012) 2012 ILApp(2d) 110729, 981 N.E.2d 1, 8.)  Differing with these opinions, the *Glaski* court wrote:  "In this case, however, we believe applying the statute to void the attempted transfer is justified because it protects the beneficiaries of the [investment trust] from the potential adverse tax consequence of the trust losing its status as a REMIC trust under the Internal Revenue Code."  (*Id*. at p. 1097.)  According to the court, the status of the assignment as void (rather than voidable) gave the plaintiff standing to challenge it.  (*Id.* at p. 1098.)  The court therefore reversed the trial court's order sustaining the demurrer to the wrongful foreclosure claim.  (*Id.* at p. 1100.)

We disagree with Kan that following *Glaski* is appropriate here.  Critically, the primary claim at issue in *Glaski* was one for wrongful foreclosure.  In contrast, Kan seeks to assert a preforeclosure cause of action for quiet title.  Although *Glaski* discussed *Gomes*, *supra*, 192 Cal.App.4th 1149, and distinguished it in certain respects, *Glaski* did not take issue with *Gomes*'s holding that a preforeclosure, preemptive action is not authorized by the nonjudicial foreclosure statutes because it creates an additional requirement that a foreclosing entity first demonstrate in court that it is entitled to foreclose.  (See *Gomes*, *supra*, 192 Cal.App.4th 1149, 1154-1156.)  As explained in *Jenkins* (a case not discussed in the *Glaski* opinion), allowing a plaintiff to assert a

7

preemptive action like the one Kan proposes "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature." (*Jenkins*, *supra*, 216 Cal.App.4th 497, 513.) Further, it "'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy.'" (*Id.* at p. 512, quoting *Gomes*, *supra*, 192 Cal.App.4th 1149, 1154, fn. 5.) *Jenkins* involved allegations essentially identical to Kan's proposed amended allegations—that the subject deed of trust was not assigned to the investment trust prior to its closing date. We agree with *Jenkins* that such allegations do not give rise to a viable preemptive action that overrides California's nonjudicial foreclosure rules.[2]

Although not necessary to our decision, we note that many courts have criticized *Glaski*'s finding that the plaintiff had standing to challenge alleged violations of the securitization process. Kan points out that *Glaski* was followed in two unpublished district court cases: *Engler v. ReconTrust Co.* (C.D.Cal., Dec. 20, 2013, No. CV12-1165 CBM) 2013 U.S. Dist. LEXIS 179950) and *Kling v. Bank of America, N.A.* (C.D.Cal., Sept. 4, 2013, No. CV13-2648 DSF) 2013 U.S. Dist. LEXIS 184981.)[3] The vast majority of courts analyzing the case, however, have found it unpersuasive. (See, e.g., *Miller v. JP Morgan Chase Bank N.A.* (N.D.Cal., Aug. 8, 2014, No. 5:13-CV-03192-EJD) 2014 U.S. Dist. LEXIS 110038, *11 ["Courts in this District have expressly rejected *Glaski*"];

---

[2] Kan's cursory argument that BANA failed to prove it acquired any interest in the second deed of trust fails. BANA was not required to prove anything in filing the demurrer. On demurrer, it is the pleadings, not the evidence, at issue. In any event, assignment of a deed of trust need not be recorded. (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 122; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272.) Kan does not allege, nor does he propose to allege, that the second deed of trust was never assigned to BANA. Furthermore, to the extent that Kan claims that the assignment to BANA was the result of a defective securitization process, the argument fails for the reasons discussed throughout this opinion.

[3] Unpublished federal district court cases are citable as persuasive authority. (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 576, fn. 8.)

8

*Tavares v. Nationstar Mortgage LLC* (S.D.Cal., July 14, 2014, No. 14CV216-WQH) 2014 U.S. Dist. LEXIS 95537, *9 [finding *Glaski*'s reasoning unpersuasive]; *Zapata v. Wells Fargo Bank, N.A.* (N.D.Cal., Dec. 10, 2013, No. C 13-04288 WHA) 2013 U.S. Dist. LEXIS 173187, *5 ["Every court in this district that has evaluated *Glaski* has found it is unpersuasive and not binding authority"]; *Davies v. Deutsche Bank National Trust Co. (In re Davies)* (9th Cir. Mar. 24, 2014, No. 12-60003), 2014 U.S. App. LEXIS 5416, *4-5 [following *Jenkins* instead of *Glaski*]; *Rajamin v. Deutsche Bank Nat'l Trust Co.* (2d Cir. N.Y. 2014) 757 F.3d 79 [disagreeing with *Glaski's* interpretation of New York law; finding improper transfer into investment trust is voidable, not void].)

Indeed, the one published California appellate decision that analyzed *Glaski* in the context of a preforeclosure lawsuit explicitly disagreed with the decision.[4] The plaintiff in *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201 (*Keshtgar*) asserted a claim similar to the one at issue here. The Court of Appeal, citing to *Gomes* and *Jenkins*, found no basis under the nonjudicial foreclosure scheme for the plaintiff to challenge the authority of the party initiating foreclosure. (*Keshtgar*, at pp. 1205-1206.) The court distinguished *Glaski*, noting that it was a postforeclosure action for damages, not an action to prevent foreclosure. (*Keshtgar*, at p. 1206.) The court went further, however, and rejected *Glaski*'s holding that a borrower has standing to challenge an assignment, finding that an assignment of a deed of trust and promissory note do not change the borrower's obligations and therefore do not create prejudice. (*Keshtgar*, at p. 1207.)

While we acknowledge the extent of this criticism, we see no reason to wade into the issue of whether *Glaski* was correctly decided, because the opinion has no direct applicability to this preforeclosure action. *Jenkins*'s holding denying this sort of preemptive lawsuit is directly applicable, and its reasoning is persuasive. Kan does not

---

[4] *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, a wrongful foreclosure case, was recently depublished, as the California Supreme Court granted review on the issue of whether, in a wrongful foreclosure case, a borrower has standing to challenge a defective assignment of a note and deed of trust that allegedly rendered the assignment void.

9

dispute that the terms of the deed of trust allowed for its assignment. Nor does Kan dispute that the subject loan is in default. Because California's nonjudicial foreclosure statutes provide Kan with no basis to challenge the authority of the entity initiating the foreclosure process, respondents' demurrer was properly sustained.

## DISPOSITION

The judgment is affirmed.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

Filed 10/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LINDSAY T. KAN, as Trustee, etc., | B254007 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC053905) |
| v. | **ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION** |
| GUILD MORTGAGE COMPANY, | |
| Defendant and Respondent; | **[No Change in Judgment]** |
| THE BANK OF NEW YORK MELLON, as Trustee, etc., et al., | |
| Inteveners. | |

THE COURT:[*]

The opinion filed herein on September 25, 2014, is modified as follows:

Page 6, second to last line, replace the word "disclosure" with "foreclosure," so that the entire sentence on pages 6-7 reads: The court held that a plaintiff could properly allege a valid cause of action for wrongful foreclosure by stating facts showing the defendant who invoked the power of sale was not the true beneficiary, and that the plaintiff's allegations

---

[*]    BOREN, P.J.        ASHMANN-GERST, J.        FERNS, J. .†

†    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

detailing the faulty transfer to the REMIC trust met this pleading standard. (*Id.* at p. 1094.)

This modification does not effect a change in judgment.

At the time of filing, this opinion was not certified for publication in the Official Reports.

For good cause it now appears that the opinion, as modified herein, should be published in the Official Reports and it is so ordered.