Filed 11/18/15  Melstrom v. Green Tree Servicing CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL D. MELSTROM et al., | B259105 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. KC066303) |
| v. | |
| GREEN TREE SERVICING, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Robert A. Dukes, Judge.  Affirmed.

Stephen R. Golden & Associates, Timothy L. McCandless for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, Kerry W. Franich for Defendants and Respondents.

# INTRODUCTION

Plaintiffs and appellants Michael D. Melstrom and Patra Melstrom appeal from a judgment of dismissal entered after the trial court sustained the demurrer of defendants and respondents Green Tree Servicing LLC (Green Tree) and Federal National Mortgage Association (Federal National) (collectively defendants) without leave to amend. Plaintiffs' lawsuit essentially challenges a sale of their real property pursuant to a non-judicial foreclosure.  Plaintiffs contend that the trial court erred in sustaining the demurrer because defendants made false representations to plaintiffs, plaintiffs were not required to allege tender of the full amount of the debt in order to pursue their claims, they had standing to assert claims that the deed of trust was void based on an alleged violation of a pooling and service agreement to which agreement plaintiffs were not parties, and they were not required to allege that they were damaged regarding their claim for violation of Business & Professions Code section 17200 et seq. (UCL).  We affirm the judgment.

# FACTUAL BACKGROUND[1]

In August 2007 plaintiffs obtained a loan from National City Mortgage, a division of National City Bank, which loan was secured by a deed of trust on real property they owned in West Covina, California.  National City Bank was the trustee under the deed of trust and National City Mortgage was the beneficiary.

In February 2010, the deed of trust was assigned to Green Tree.  Green Tree substituted Northwest Trustee Services, Inc. as the trustee under the deed of trust in place of National City Bank.  Plaintiffs defaulted on their payments, and in July 2011, a notice of default was recorded.  In November 2011, and December 2012, notices of trustee's sale were recorded.

---

[1]     We state the facts as alleged in the operative complaint and from matters of which the trial court took judicial notice.

In or about January 2013, plaintiffs entered into negotiations with Green Tree for a short-sale of the property.  Plaintiffs alleged in their operative complaint that defendants "led Plaintiffs to believe that their house would not be sold at a foreclosure sale"; plaintiffs were promised that they "could move forward with the short sale if they came out of bankruptcy or got a court order to move forward with the short sale"; Green Tree represented to them that they were "in negotiations for a short-sale, in lieu of a foreclosure sale of their home," and "in order to go forward with the Short Sale" plaintiffs would either have to obtain a court order approving the sale or "come out of Bankruptcy"; defendants represented by, inter alia, "repeatedly postponing the scheduled sale date of the PROPERTY, and informing Plaintiffs or their agents that their file was being reviewed, on multiple occasions," that defendants "would proceed with the review of a short sale if Plaintiffs were no longer in bankruptcy"; and defendants "led Plaintiffs to believe" that their property would not be sold at a foreclosure sale during the short-sale negotiations.  Plaintiffs also alleged that in July 2013 they "removed" the bankruptcy proceeding.

Prior to September 5, 2013, the deed of trust was assigned to Federal National (aka Fannie Mae).  In or about September 2013, defendants foreclosed on the property, and it was purchased by Federal National (aka Fannie Mae) at the trustee's sale.[2]  Plaintiffs alleged in their operative complaint that the foreclosure sale was void because their loan was not transferred into a securitized trust by the deadline required by a pooling and servicing agreement.

---

[2]    The assignment was made to, and the purchase of the property was made by, "Federal National Mortgage Association a/k/a Fannie Mae."

## PROCEDURAL BACKGROUND

In September 2013, plaintiffs filed their complaint, and defendants filed a demurrer to it. Plaintiffs thereafter filed a filed a first amended complaint,[3] and defendants again filed a demurrer.[4]

Plaintiffs filed the operative, second amended complaint, asserting causes of action for promissory estoppel (first cause of action), negligent misrepresentation (second cause of action), quiet title (third cause of action), wrongful foreclosure (fourth cause of action), declaratory relief (fifth cause of action), to set aside trustee sale (sixth cause of action), to cancel trustee sale (seventh cause of action), and violation the UCL (eighth cause of action). Defendants demurred to the second amended complaint.

The trial court sustained the demurrer to the first cause of action for promissory estoppel on the basis that plaintiffs did not allege that defendants made the clear promise or specific agreement that they would not sell the home at a foreclosure sale; to the second cause of action for negligent misrepresentation on the basis that plaintiffs did not allege that defendants promised "not" to conduct a sale; to the third through seventh causes of action for quiet title, wrongful foreclosure, declaratory relief, to set aside trustee sale, and to cancel trustee sale on the basis that plaintiffs did not allege that they tendered the debt, they admit they have no equity in the property, and they do not have standing to assert a claim based on alleged violations of the securitized trust's pooling and service agreement that allegedly rendered the assignment of the deed of trust void; and to the eighth cause of action for violation of the UCL on the basis that plaintiffs lacked standing to pursue the claim.

Judgment was thereafter entered in favor of defendants. Plaintiffs filed a timely notice of appeal.

---

[3] According to defendants, plaintiffs filed their first amended complaint before defendants' demurrer to the original complaint was heard.

[4] Defendants' state that their demurrer to the first amended complaint was sustained with leave to amend.

4

# DISCUSSION

## A. Record of Appeal

Because the record does not contain a reporter's transcript of the hearing on the demurrer, we asked the parties to brief whether plaintiffs' failure to provide a reporter's transcript or a suitable substitute warrants affirmance based on the adequacy of the record. Plaintiffs did not brief the issue, but defendants state that "the failure to provide a reporter's transcript does not warrant a summary affirmance. . . . . [W]hat might have been said at the demurrer hearing is irrelevant in determining the legal sufficiency of the causes of action the [plaintiffs'] tried to allege in the complaint."

As noted below, we review a ruling on a demurrer under a de novo standard. (*Phillips v. Bank of America, N.A.* (2015) 236 Cal.App.4th 217, 224.) Under the circumstances, the record is adequate to address the trial court's ruling on the demurrer despite the lack of a reporter's transcript. We agree however with defendants argument, as discussed below, that "the failure to procure [the reporter's] transcript does preclude [plaintiffs'] from claiming that they proposed viable amendments to the complaint in the trial court."

## B. Standard of Review

A ruling on a demurrer is reviewed under a de novo standard. (*Phillips v. Bank of America, N.A.*, *supra*, 236 Cal.App.4th at p. 224.) As the Supreme Court has observed, "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the

5

defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### C.    Plaintiffs' Two Theories

Plaintiffs' second amended complaint is based upon two theories. The first theory is that defendants led them to believe that if they dismissed their bankruptcy case, the foreclosure sale would be postponed and the plaintiffs could short sell[5] the property. The second theory is that the foreclosure sale is void because the assignment of deed of trust breached a pooling and servicing agreement. The trial court did not err in sustaining defendants' demurrer.

#### 1.    *The Lost Short Sale Theory*

Plaintiffs' causes of action for promissory estoppel (first cause of action), negligent misrepresentation (second cause of action), and violation of the UCL (eighth cause of action), rely on the same contention: that Green Tree misled them to believe that the foreclosure sale would be postponed and that they could short sell the property if their bankruptcy case was dismissed. The demurrer was properly sustained to each of these causes of action.

Plaintiffs alleged in their promissory estoppel cause of action that defendants "led Plaintiffs to believe that their house would not be sold at a foreclosure sale," and plaintiffs were promised that they "could move forward with the short sale" if they "came out of bankruptcy or got a court order to move forward with the short sale." Plaintiffs alleged in their negligent misrepresentation cause of action that Green Tree represented to them that they were "in negotiations for a short-sale, in lieu of a foreclosure sale of their home," and "in order to go forward with the Short Sale" plaintiffs would either have to

---

[5]    "A 'short sale' is a sale of property for a price that is less than the amount of debt on the property." (4 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 10:120, p. 10-423.)

obtain a court order approving the sale, or "come out of Bankruptcy." Plaintiffs also alleged that defendants represented by, inter alia, "repeatedly postponing the scheduled sale date of the PROPERTY, and informing Plaintiffs or their agents that their file was being reviewed, on multiple occasions," that defendants "would proceed with the review of a short sale if Plaintiffs were no longer in bankruptcy." Plaintiffs alleged in their UCL cause of action that defendants "[led] Plaintiffs' to believe" that their property would not be sold at a foreclosure sale during the short-sale negotiations.

Plaintiffs did not allege that defendants promised or otherwise represented to them that the short sale would be approved, or that the foreclosure sale would not occur or would be postponed. Plaintiffs merely alleged that defendants represented that they were in "negotiations" for a short-sale, in lieu of a foreclosure sale of their home;" "in order to go forward with the Short Sale" plaintiffs would either have to obtain a court order approving the sale, or "come out of Bankruptcy'" and defendants "would proceed with the review of a short sale." Plaintiffs also merely alleged that defendants promised them that they "could move forward with the short sale." In addition, what plaintiffs' subjectively believed is not the same as what was actually promised or represented. Plaintiffs have not stated facts sufficient to establish a misrepresentation.

a)      Promissory Estoppel

"The elements of promissory estoppel are (1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee." (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 929; *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.* (2011) 196 Cal.App.4th 1559, 1573.) Judicially noticed documents establish that plaintiff did not rely on the alleged promise made to them. As noted above, plaintiffs alleged in their promissory estoppel cause of action that plaintiffs were promised that they "could move forward with the short sale" if they "came out of bankruptcy or got a court order to move forward with the short sale." Plaintiffs alleged that the promise was made in May 2013, and they therefore "removed" the bankruptcy proceeding in July 2013. The trial court however granted defendants'

request for judicial notice of, inter alia, the dockets in plaintiffs' four bankruptcy proceedings (two bankruptcy proceedings for each plaintiff).  Those judicially noticed documents establish that plaintiffs' four bankruptcy proceedings were dismissed before the alleged May 2013 promise.  These documents therefore establish that plaintiff did not rely on the alleged promise made to them.

### b)      Negligent Misrepresentation

"The elements of negligent misrepresentation are '"[M]isrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage. [Citation.]" [Citation.]' (*Shamsian v. Atlantic Richfield Co*. (2003) 107 Cal.App.4th 967, 983 [132 Cal.Rptr. 2d 635].)" (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 127.)

Plaintiffs dedicate one paragraph of their appellate brief to their negligent misrepresentation cause of action, and do not argue why the facts alleged in the operative complaint are sufficient to constitute a cause of action.  Plaintiffs therefore have forfeited their claim that the trial court erred in sustaining defendants' demurrer to that cause of action because they sufficiently pled that cause of action.  "'"'Although our review of a [demurrer] is de novo, it is limited to issues [that] have been adequately raised and supported in plaintiffs' brief. [Citations.]  Issues not raised in an appellant's brief are deemed waived or abandoned. [Citation.]'" [Citation.]  An appellate court 'will not develop the appellants' arguments for them . . . .' [Citation.]" (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282, fns. omitted.)

8

Even if we were to reach the merits, as noted above, plaintiffs alleged in their negligent misrepresentation cause of action that Green Tree represented to them that they were "in negotiations for a short-sale, in lieu of a foreclosure sale of their home," and "in order to go forward with the Short Sale" plaintiffs would either have to obtain a court order approving the sale, or "come out of Bankruptcy." These alleged misrepresentations are not misrepresentations that defendants promised or otherwise represented to plaintiffs that the short sale would be approved, or that the foreclosure sale would not occur or would be postponed.

### c) UCL

"The UCL permits civil recovery for 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . .' [Citation.] '"Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. . . ."'" [Citation.]" (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 80-81.) A plaintiff does not have standing to sue under the UCL unless he or she "has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.)

As the trial court stated in sustaining the demurrer to the UCL cause of action, plaintiffs lack standing to sue under the UCL. They did not allege that they lost money or property. Indeed, the foreclosure proceedings plaintiffs complain of were the result of their default on the loan, and their default on the loan occurred before any alleged conduct in violation of the UCL.

Citing *Daugherty v. American Honda Motor Co., Inc*. (2006) 144 Cal.App.4th 824 at page 838, plaintiffs contend that "a Business and Professions Code section 17200 violation can be shown even without allegations of . . . damage." *Daugherty* cited to *Committee on Children's Television, Inc. v. General Foods Corp*. (1983) 35 Cal.3d 197 for that proposition, and that case makes clear that to state a cause of action "for injunctive relief" under that section, allegations "of damage are unnecessary." (*Id*. at p.

9

211.) Although in addition to alleging that they suffered general and special damages, they alleged that they "seek injunctive relief to enjoin future harmful conduct" to them. Because, the trustee sale occurred, however, there is no "future" harmful conduct under the UCL to enjoin.

### 2. *The Delayed Securitization Theory*

Plaintiffs' causes of action for quiet title (third cause of action), wrongful foreclosure (fourth cause of action), declaratory relief (fifth cause of action), to set aside trustee sale (sixth cause of action), and cancel trustee deed (seventh cause of action) causes of action rely on the same contention, alleged based on information and belief: that the foreclosure sale was void because their loan was not transferred into a securitized trust by the deadline required by a pooling and servicing agreement. The demurrer was properly sustained to each of these causes of action.

### a) Standing

Plaintiffs lack standing to challenge the assignment of the deed of trust because they are not parties to the assignment or the pooling and servicing agreement that was supposedly violated. In *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497 (*Jenkins*), as in this case, the plaintiff borrower alleged that her loan was pooled with other loans in a securitized investment trust without proper compliance with the pooling and servicing agreement. The court affirmed the trial court's order sustaining a demurrer to a declaratory relief cause of action, holding, inter alia, that the plaintiff lacked standing to challenge the alleged violations of the assignment and pooling and servicing agreements because the plaintiff was not a party to those agreements. (*Id*. at pp. 514-515.)

The court in *Jenkins*, *supra*, 216 Cal.App.4th 497 stated: "[E]ven if the asserted improper securitization (or any other invalid assignments or transfers of the promissory note subsequent to [the plaintiff's] execution of the note . . .) occurred, the relevant parties to such a transaction were the holders (transferors) of the promissory note and the

10

third party acquirers (transferees) of the note. 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to [the] plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note.' (*Herrera* [*v. Federal National Mortgage Association* (2012)] 205 Cal.App.4th [1495,] 1507.) As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [the plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions. (See *In re Correia* (Bankr. 1st Cir. 2011) 452 B.R. 319, 324-325 [debtors lacked standing to raise violations of pooling and service agreement].) [¶] Furthermore, even if any subsequent transfers of the promissory note were invalid, [the plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note. It is also possible to imagine one or many invalid transfers of the promissory note may cause a string of civil lawsuits between transferors and transferees. [The plaintiff], however, may not assume the theoretical claims of hypothetical transferors and transferees for the purposes of showing a 'controversy of concrete actuality.' (See *Jessin* [*v. County of Shasta* (1969)] 274 Cal.App.2d [737,] 743 (*Jessin*).)" (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 514-515.)

Notwithstanding the holding in *Jenkins*, *supra*, 216 Cal.App.4th 497, plaintiffs cite *Glaski v. Bank of America, N.A.* (2013) 218 Cal.App.4th 1079 (*Glaski*), contending that they have standing to complain about the assignment of the deed of trust and for that proposition. The court in *Glaski*—without discussing the holding in *Jenkins*—held that the borrower in that case did have standing to assert a post-foreclosure cause of action for wrongful foreclosure based on the alleged failure of the assignor of the deed of trust to effect the assignment prior to the closing date of the securitized trust. (*Id*. at p. 1097.)

Subsequent to the decision in *Glaski*, *supra*, 218 Cal.App.4th 1079, the recent case of *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736 (*Kan*) held, consistent with

11

the holding in *Jenkins*, *supra*, 216 Cal.App.4th 497, that the borrowers did not have standing to enforce the rights of third parties in assignment and pooling and servicing agreements. (*Kan*, *supra*, 230 Cal.App.4th at pp. 741-743.) The Court in *Kan* was critical of *Glaski*'s holding on the standing issue because it deviated from the weight of California[6] and federal authority. (*Kan*, *supra*, 230 Cal.App.4th at p. 744.)

In *Kan*, the court observed in dicta that the "vast majority of [federal] courts analyzing [*Glaski*, *supra*, 218 Cal.App.4th 1079] have found it unpersuasive. (See, e.g., *Miller v. JPMorgan Chase Bank N.A.* (N.D.Cal., Aug. 8, 2014, No. 5:13-CV-03192-EJD) 2014 U.S.Dist. Lexis 110038, pp. *11-*12 ['Courts in this District have expressly rejected *Glaski* . . . .']; *Tavares v. Nationstar Mortgage LLC* (S.D.Cal., July 14, 2014, No. 14cv216-WQH-NLS) 2014 U.S.Dist. Lexis 95537, p. *9 [finding Glaski's reasoning unpersuasive]; *Zapata v. Wells Fargo Bank, N.A.* (N.D.Cal., Dec. 10, 2013, No. C 13-04288 WHA) 2013 U.S.Dist. Lexis 173187, p. *5 ['Every court in this district that has evaluated *Glaski* has found it is unpersuasive and not binding authority']; *Davies v. Deutsche Bank National Trust Co.* (*In re Davies*) (9th Cir., Mar. 24, 2014, No. 12-60003) 565 Fed.Appx. 630 [2014 U.S.App. Lexis 5416, pp. *4-*5] [following *Jenkins* instead of *Glaski*]; *Rajamin v. Deutsche Bank National Trust Co.* (2d Cir. 2014) 757 F.3d 79 [disagreeing with *Glaski*'s interpretation of New York law; finding improper transfer into investment trust is voidable, not void].)" (*Kan*, *supra*, 230 Cal.App.4th at p. 744.)

In addition, *Glaski, supra,* 218 Cal.App.4th 1079 followed a New York decision, *Wells Fargo Bank, N.A. v. Erobobo* (2013) 39 Misc.3d 1220(A) (*Erobobo I*), which stated: "'Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. EPTL § 7-2.4. Therefore, the acceptance of the note

---

**6**     Several Court of Appeal decisions that rejected the holding in *Glaski, supra*, 218 Cal.App.4th 1079 and held that borrowers did not have standing to challenge allegedly void assignments of their notes and deeds of trust are currently pending review in the Supreme Court. (See *Boyce v. T.D. Service Co.*, review granted July 15, 2015, S226267; *Mendoza v. JPMorgan Chase Bank, N.A.*, review granted Nov. 12, 2014, S220675; *Keshtgar v. U.S. Bank, N.A.*, review granted Oct. 1, 2014, S220012; and Y*vanova v. New Century Mortgage Corp.*, review granted Aug. 27, 2014, S218973.)

and mortgage by the trustee after the date the trust closed, would be void. [Citations.]'" (*Glaski, supra,* 218 Cal.App.4th at p. 1097.) *Erobobo I* has since been reversed. (*Wells Fargo Bank, N.A. v. Erobobo* (2015) 127 A.D.3d 1176 (*Erobobo II*).) The court in *Erobobo II, supra,* 127 A.D.3d 1176, at page 1178, held that a borrower whose loan was assigned to a securitized trust has no standing to challenge the assignee's status "based on purported noncompliance with certain provisions of the" pooling and servicing agreement.

As noted above, the issue of whether the reasoning in *Glaski*, *supra*, 218 Cal.App.4th 1079 is meritorious in light of the overwhelming number of authorities rejecting that reasoning is currently pending before the Supreme Court, which presumably will resolve the conflict when it issues its opinion on that matter. Until then, we follow the weight of the authorities that hold that borrowers, such as plaintiffs, lack standing to assert a claim based on alleged violations of the securitized trust's pooling and service agreement that allegedly rendered the assignment of the deed of trust void.

Plaintiffs also contend, without citation to the record, that the "[c]lear language in the Deed of Trust gives the borrower—[plaintiffs], in this case—the right to sue to determine if the actual 'Lender' is exercising the power to foreclose." Contrary to plaintiffs' contention, however, the deed of trust does not expressly authorize plaintiffs to file a lawsuit to determine if the actual "Lender" is exercising the power to foreclose. The deed of trust merely expressly authorizes a lawsuit "to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Plaintiffs' operative complaint does not dispute that they defaulted on the loan, nor does it assert a defense to an "assignment and sale" under the deed of trust.

Plaintiffs also claim that they can challenge the allegedly invalid assignment of their loans to a securitized trust because the deed of trust is an adhesion contract. Plaintiffs' contention is without merit. Plaintiffs did not allege in the operative complaint that the deed of trust is an adhesion contract. In addition, they allege no facts regarding a disparity in bargaining power, an inability to shop for better terms, or plaintiffs' lack of sophistication. In any event, the deed of trust does not grant plaintiffs standing or

13

otherwise refer to their ability to judicially challenge the assignment of their note and deed of trust.

b)      Tender

The trial court also properly sustained defendant's demurrer because plaintiffs failed to allege a tender of the money they borrowed.  Typically, a borrower who defaults on his payments is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain" a cause of action challenging a foreclosure sale. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; see *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526; *United States Cold Storage v. Great Western Savings & Loan Assn.* (1985) 165 Cal.App.3d 1214, 1225.)

"Tender [however] is not required where the foreclosure sale is void, rather than voidable . . . ." (*Glaski, supra*, 218 Cal.App.4th at p. 1100, citing *Lester v. J.P. Morgan Chase Bank* (N.D.Cal. 2013) 926 F.Supp.2d 1081, 1093.)  Plaintiffs contend that they are not required to allege tender of the full amount of the debt because, under *Chan v. Chase Home Fin. LLC* (C.D.Cal. June 18, 2012, No. CV 11-01486 GAF (Ex)) 2012 U.S.Dist. Lexis 189932, p. 11, a plaintiff is not required to allege tender when the foreclosure sale is void because the servicer of the loan had agreed to postpone the foreclosure sale. Plaintiffs' contention is without merit because, as noted above, plaintiffs did not allege that defendants promised or otherwise represented to them that the foreclosure sale would not occur or would be postponed.  Similarly, as also discussed above, notwithstanding the minority holding in *Glaski, supra*, 218 Cal.App.4th 1079, plaintiffs lack standing to assert a claim based on alleged violations of the securitized trust's pooling and service agreement allegedly rendering the assignment of the deed of trust void.  Because plaintiffs have not alleged facts sufficient to establish that the foreclosure sale is void, and failed to allege that they tendered the money they borrowed, the trial court did not err is sustaining defendant's demurrer.

**D. Leave to Amend**

Plaintiffs contend that the trial court abused its discretion when it denied them leave to amend their second amended complaint. But plaintiffs have not provided a reporter's transcript of the hearing on the demurrer or an agreed or settled statement. (Cal. Rules of Court, rule 8.130(h).) Without a reporter's transcript or an agreed or settled statement, the record is silent as to the reasons the trial court denied leave to amend. As a result, we cannot, for example, determine whether plaintiff offered proposed amendments and, if so, the trial court's response to those proposals. A judgment or order of the trial court is presumed correct on appeal. We must affirm a judgment or order unless the appellant affirmatively demonstrates an abuse of discretion. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200-1201; *People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 80.) Plaintiffs did not even state before this court how they would amend. Because there is no record of the hearing on the demurrer, plaintiffs have failed to satisfy their burden on appeal of demonstrating an abuse of discretion.

**DISPOSITION**

The judgment is affirmed. Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

15